OPINION
This appeal, having been heretofore placed on the accelerated calendar, is being considered pursuant to App.R. 11.1(E) and Loc.R. 12. Pursuant to Loc.R. 12, we hereby elect to issue a full opinion in lieu of a judgment entry.
In 1995, defendant-appellant, Chad R. Pelland, was convicted of trafficking in marijuana in Defiance C.P. Case No. 6462. He was sentenced to a prison term of one and one-half years, but was later granted shock probation. He subsequently absconded from the jurisdiction and was eventually arrested in Florida.
On June 6, 1997, defendant was indicted for escape, in violation of R.C. 2921.34. Defendant pled guilty to the escape charge on April 9, 1998, and at that time, also admitted to a probation violation. Pursuant to the plea agreement, defendant was sentenced to a determinate term of two years imprisonment, to be served consecutively to the sentence for the probation violation. Almost two years later, defendant filed a motion to withdraw his guilty plea which the trial court denied. Defendant now appeals and raises the following assignment of error:
 The trial court erred in denying Mr. Pelland's motion to withdraw his guilty plea in violation of his right to due process guaranteed under the Fifth and Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.
The Ohio escape statute, R.C. 2921.34(A)(1), states that: "No person, knowing the person is under detention or being reckless in that regard, shall * * * purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period[.]" In essence, defendant contends that he could not be convicted under this statute because the shock probation judicially granted in this case by the Defiance County Common Pleas Court and supervised by the Defiance County Probation Department does not constitute the "detention" specified under R.C. 2921.34 and defined in R.C. 2921.01(E).
Under a prior version of the statute, the defendant was correct. Former R.C. 2921.01(E) expressly excluded shock probation from the parameters of the escape statute by defining "detention" as "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution otherthan release on parole or shock probation." (Emphasis sic.) 146 Ohio Laws, Part IV, 7335. Subsequently however, and prior to the defendant's fleeing his probation in this case, the statutory definition of detention in R.C. 2921.01(E) was amended by the legislature to remove the exclusions of parole and shock probation. The relevant language in R.C.2921.01(E) now defines "detention" simply as "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution." See State v.Conyers (1999), 87 Ohio St.3d 246, 249.
In Conyers, supra, the Ohio Supreme Court concluded that the General Assembly manifested its intent in 146 Ohio Laws, Part II, 2214 to remove the emphasized exclusions so that parolees would be included in the class of persons subject to prosecution for escape. Id. at 248. Based on the reasoning of Conyers, supra, we believe it is similarly probable that the General Assembly intended that individuals on shock probation were also to be included within the class of individuals subject to the escape statute.
However, the defendant urges that such a construction of the current definition of "detention" set forth in R.C. 2921.01(E), is not reasonable because as in most instances of judicially ordered shock probation and resulting supervision by the county probation department, the defendant in this case was neither (1) under the supervision of an employee of the department of rehabilitation and correction, nor (2) on any type of release from a state correctional institution as required by the statute.
In response to these arguments, the State asserts in its brief that "persons on shock probation are supervised by the Adult Parole Authority which is under the Department of Corrections." Additionally, the State argues that the defendant was aware of the change in the law in October 1996 covering escape from probation prior to his absconding and makes reference in its brief to a form the defendant supposedly signed notifying him that if he absconded supervision, he could be charged with escape. However, there is no "waiver form" or anything else in the portions of the record supplied to us in this case to support either of these assertions. We also note that no transcript of the shock probation hearing is provided in the record. Nor is there a transcript of the hearing held on defendant's motion to withdraw his guilty plea.
Nevertheless, a review of the transcript of the plea proceeding reveals that the escape to which defendant pled guilty was allegedly based on his failure to return or report to the Defiance County Adult Probation Department after he had received a travel permit to Indiana to pursue a job. The trial court's colloquy with defendant when his guilty plea was entered indicates that defendant understood the nature of the charge against him and that upon entering a guilty plea, his right to appeal would be greatly diminished. Further, it is clear from the record that defendant's counsel had requested and received full discovery of the facts pertaining to the indictment prior to defendant entering his plea. In sum, an examination of the transcript of the guilty plea proceeding discloses that the trial court complied with Crim.R. 11(C), and there is nothing in the record to suggest that defendant did not enter his plea knowingly, intelligently and voluntarily. Moreover, the defendant was also aware that the potential prison time imposed for escape could have been more than the two years to which he was sentenced.
Crim.R. 32.1 provides that a post-conviction motion to withdraw a guilty plea is only granted in order to correct a manifest injustice.State v. Xie (1992), 62 Ohio St.3d 521, 526. Further, the burden of demonstrating that a "manifest injustice" occurred rests with the defendant. State v. Smith (1977), 49 Ohio St.2d 261, 264. The Smith
case, citing United States v. Semel (C.A.4, 1965), 347 F.2d 228, noted that manifest injustice is a flexible and undefined standard, but that "[t]his term [manifest injustice] has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." Id.
We know of no authority requiring a recitation of facts in support of a guilty plea although it may clearly be the better practice of many courts to have the prosecutor do so. Nevertheless, it is a plea of "not guilty" that requires the State to prove all material facts relating to the crime charged. State v. Manago (1974), 38 Ohio St.2d 223, 226. In the case before us, the defendant now attempts to utilize the prosecutor's recitation of facts at the guilty plea proceeding as some sort of evidentiary basis to establish the legal insufficiency of the underlying charge so as to justify the withdrawal of the plea.
Thus, for example, defendant argues that he must be excluded from the definition of "detention" because unlike a parolee, the "evidence" establishes that he was under the supervision of the county probation department and not the department of rehabilitation and correction while on release. Defendant claims that the supervision of persons on shock probation is administered by the court's probation officers as opposed to employees of the department of rehabilitation and corrections and finds support for such a distinction in R.C. 2301.27, which allows the court of common pleas to appoint probation officers.
On the other hand, section (A)(1) of R.C. 2301.27 states that the court "shall not appoint as a probation officer any person who does not possess the training, experience, and other qualifications prescribed by the adult parole authority created by section 5149.02 of the Revised Code." This statute further provides in Section (B)(1) that:
 In lieu of establishing a county department of probation under division (A) of this section and in lieu of entering into an agreement with the adult parole authority as described in division (B) of section 2301.32 of the Revised Code, the court of common pleas may request the board of county commissioners to contract with, and upon that request the board may contract with, any nonprofit, public or private agency, association, or organization for the provision of probation services and supervisory services for persons placed under community control sanctions.
Thus, it is apparent that the statute contemplates agreements entered into with the adult parole authority for supervision. See R.C. 2301.32. Furthermore, the definition in R.C. 2921.01(E) expressly allows supervision by an employee of the department of rehabilitation and correction. Whether the Defiance County Adult Probation officers involved in defendant's supervision served under the authority of the court or by agreement with the adult parole authority (or both) is not entirely clear from the record and might have been a legal challenge as to the capacity of the supervising probation officer that defendant could have raised prior to his plea or at trial. Defendant did not do so in this case.
More importantly, even if defendant's claims were established factually, it is not at all clear that his legal argument would prevail. Specifically, R.C. 2921.34(B) provides that: "Irregularity in bringing about or maintaining detention, or lack of jurisdiction of the committing or detaining authority, is not a defense to a charge under this section if the detention is pursuant to judicial order[.]" In the case of any other detention, irregularity in bringing about or maintaining the detention is an affirmative defense to the charge of escape if the escape involved no substantial risk of harm to the person or property of another or the detaining authority knew or should have known there was no legal basis or authority for the detention. R.C. 2921.34(B).
Finally, we question the extent of possible prejudice to the defendant on this issue. See State v. Stewart (1977), 51 Ohio St.2d 86, 93 (there must be a showing of prejudice before a guilty plea may be vacated). For example, having waited to file the motion to withdraw his guilty plea until the prison sentence has been virtually completed, the defense counsel emphasized at oral argument that the remaining prejudice consisted primarily in the defendant being subjected to the post release control of the Adult Parole Authority. Yet, despite any uncertainties in the record regarding the involvement of the APA in defendant's original probation, the matter of post release control under the supervision of the APA was specifically addressed at the plea hearing and acknowledged by the defendant. The judgment entry of his guilty plea and sentencing provided: "Court advised the Defendant that additional prison time may be added to the stated prison term by the Parole Board for any rule violation committed while in prison that is a crime under State or Federal Law. Also, a period of supervision by the Adult Parole Authority after release from prison is optional for a period of up to three (3) years of Post Release Control. The Defendant stated that he understood."
Along the same line, the defendant also challenges the validity of his "detention" under the escape statute by arguing that a person on shock probation is not on "release" from a state correctional institution because the shock probationer's sentence is suspended by the court not the institution. Defendant relies on R.C. 2951.05, which provides that:
 If an offender mentioned in section 2951.02 of the Revised Code resides in the county in which the trial was conducted, the court that issues an order of probation shall place the offender under the control and supervision of a department of probation in the county that serves the court. If there is no department of probation in the county that serves the court, the probation order, under section 2301.32 of the Revised Code, may place the offender on probation in charge of the adult parole authority created by section 5149.02 of the Revised Code that then shall have the powers and duties of a county department of probation.
However, the defendant's argument on the issue of release is similarly subject to dispute inasmuch as the current statutory definition of "detention" has been broadly defined to include supervision of a person on "any type of release from a state correctional facility." Conyers,supra, at 249 (Emphasis sic.). We note that the General Assembly has provided a specific definition of a "releasee" in R.C. 2967.01[1] as part of its revision of Ohio's Criminal Code, but has provided no definition of "release." In any event, it is by no means established that a person released from a state correctional facility via a judicial order of shock probation is not a person on any type of release from the state facility. Thus, once again, there is, at best, an argument which the defendant might have chosen to raise prior to entering a voluntary guilty plea.
In sum, it is clear that the arguments and statutory constructions now raised by the defendant regarding the escape charge in this case were never brought before the trial court and are subject to different interpretations than those urged by the defendant. As such, they do not rise to the level of demonstrating a "manifest injustice" sufficient to void defendant's plea. On the contrary, they are precisely the kind of factual and legal challenges to a charge which any defendant must decide whether to pursue at trial or give up in exchange for a negotiated plea. By entering into a knowing, intelligent and voluntary plea of guilty without raising these issues, the defendant waived the right to pursue these arguments. State v. Wilson (1979), 58 Ohio St.2d 52.
Based on the foregoing, we find that the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. Accordingly, defendant's assignment of error is overruled and the judgment of the trial court is affirmed.
 _________________________ SHAW, J.
HADLEY, P.J., and WALTERS, J., concur.
[1] R.C. 2967.01(J) defines "releasee" to mean "an inmate who has been released from confinement pursuant to section 2967.28 of the Revised Code under a period of post-release control that includes one or more post-release control sanctions."