DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Stephen H. Humphrey, appeals the judgment of the Williams County Court of Common Pleas denying his motion to withdraw his guilty plea. On April 25, 2004, appellant, appearing in court with counsel, entered pleas of guilty to one count of grand theft, a fourth degree felony and a violation of R.C.2913.02(A)(1); one count of vandalism, a fourth degree felony and a violation of R.C. 2909.05(B)(1)(a); two counts of theft, fifth degree felonies and violations of R.C. 2913.02(A)(1); two counts of receiving stolen property, fifth degree felonies and violations of R.C. 2913.51(A); one count of receiving stolen property, a fourth degree felony and a violation of R.C.2913.51(A). After receiving the plea, the trial court entered a verdict of guilty on each count. On June 2, 2004, appellant was sentenced to 18 months incarceration for each count of grant theft, vandalism, and the fourth degree felony of receiving stolen property, and 12 months incarceration for the remaining offenses. The sentences were ordered to run concurrently for a total term of 18 months incarceration. Appellant was also ordered to pay restitution in the amount of $12,599.55, and the costs of prosecution and supervision.
 {¶ 2} Appellant later moved for judicial release and after a hearing on September 15, 2004, his motion was granted. He was placed on community control for a period of three years, subject to a set of special conditions and subject to the reimposition of his remaining sentence for any community control violation.
 {¶ 3} On July 12, 2005, nearly ten months after he was granted judicial release, appellant filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Attached in support of his motion was a 25-page report from Dr. Peter Breggin, a psychiatrist with a subspecialty in clinical psychopharmacology, indicating that he had evaluated appellant and reviewed his medical records, presentence investigation report, and transcripts of his guilty plea hearing. The report's conclusion, as characterized by appellant in his appellate brief, was that appellant "had suffered from extensive psychosis which pre-dated the offense conduct and lasted until some time after the commencement of his term of incarceration" due to the "effects of various medications which Appellant had been taking during the time of the underlying offense conduct and through the time of his plea." Also included in the motion were several articles from medical journals discussing the risks and side effects of the drugs which appellant had been prescribed, and an excerpt on "manic episodes" from the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition. Appellee responded with a short memorandum urging only that the trial court deny the motion in its exercise of discretion.
 {¶ 4} On July 19, 2005, the trial court filed a judgment entry denying appellant's motion due to the "significant delay between the plea of guilty and the motion to withdraw the plea" and found no hearing necessary, citing State v. Smith (1977),49 Ohio St.2d 261.
 {¶ 5} Appellant has filed a sole assignment of error:
 {¶ 6} "THE LOWER COURT'S FINDING THAT THERE WAS `SIGNIFICANT DELAY' BETWEEN APPELLANT'S PLEA AND APPELLANT'S MOTION TO WITHDRAW PLEA PURSUANT TO CRIM. RULE 32.1 AND ITS SUMMARY DENIAL OF SUCH MOTIONS WERE [sic] ERRONEOUS."
 {¶ 7} The decision to grant or deny a defendant's motion to withdraw a guilty plea rests in the sound discretion of the trial court. State v. Smith, 49 Ohio St.2d at paragraph two of the syllabus. On appellate review, an abuse of discretion will be found only where the trial court displays "an unreasonable, arbitrary or unconscionable attitude." State v. Longo (1982),4 Ohio App.3d 136, paragraph three of the syllabus. "What constitutes an abuse of discretion with respect to denying a motion to withdraw a guilty plea necessarily is variable with the facts and circumstances involved." State v. Blatnik (1984),17 Ohio App.3d 201, 202, citing State v. Walton (1981),2 Ohio App.3d 117, 119.
 {¶ 8} Crim.R. 32.1 provides:
 {¶ 9} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."
 {¶ 10} A Crim.R. 32.1 motion should be granted only in extraordinary cases. State v. Smith, 49 Ohio St.2d at 264, citing United States v. Semel (C.A.4, 1965), 347 F.2d 228, certiorari denied 382 U.S. 840, rehearing denied 382 U.S. 933. "The standard rests upon practical considerations important to the proper administration of justice, and seeks to avoid the possibility of a defendant pleading guilty to test the weight of potential punishment." Id., citing Kadwell v. United States
(C.A.9, 1963), 315 F.2d 667, 670.
 {¶ 11} In State v. Smith, upon which the trial court relied, paragraph three of the syllabus holds: "An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." The crux of this appeal is whether a span of nearly ten months between the entering of a guilty plea and a motion to withdraw it constitutes "undue delay." If so, then it would not be dispositive of the motion; it would be a factor considered against appellant's credibility.
 {¶ 12} Appellant argues that after his judicial release from incarceration, he did not delay in finding new physicians to continue his treatment, and the lapse of time to compile an expert's report was not unduly long. We need not consider this argument, however; even if we were to find that ten months does not constitute "undue delay," the transcript of the hearing at which appellant entered his pleas demonstrates that he knowingly and voluntarily did so. Appellant demonstrated his understanding at the hearing as follows (in pertinent part):
 {¶ 13} "THE COURT: Today on the 26th day of April of 2004 at about 8:45 in the morning are you under the influence of any medication or drugs or alcohol so that your judgment is in any way impaired [sic]?
 {¶ 14} "MR. HUMPREY: No, Your Honor.
 {¶ 15} "THE COURT: Understand what's going on here?
 {¶ 16} "MR. HUMPHREY: Yes.
 {¶ 17} "THE COURT: Has anyone threatened you or promised you anything to compel you to enter these pleas here today?
 {¶ 18} "MR. HUMPHREY: No, Your Honor.
 {¶ 19} After explaining each of the seven counts in the indictment and the potential penalties, the trial court carefully explained each right waived, then it continued:
 {¶ 20} "THE COURT: Is there anything that I've said that requires further explanation here?
 {¶ 21} "MR. HUMPHREY: No, Your Honor.
 {¶ 22} "THE COURT: Voluntarily give up these rights in order to enter these pleas here today, believing it's in your best interest to do that [sic]?
 {¶ 23} "MR. HUMPHREY: Yes, Your Honor.
 {¶ 24} "THE COURT: Doing so of your own free will?
 {¶ 25} "MR. HUMPHREY: Yes, Your Honor."
 {¶ 26} Appellant's counsel urged leniency and the imposition of only community control at the sentencing hearing due to appellant's circumstances and mental health conditions, but at no time was the issue of appellant's competency raised. More disproving of appellant's argument are his statements at the sentencing hearing. Although appellant posits that his alleged incompetency lasted until some time during his incarceration, the transcript demonstrates his lucidity when he addressed the court:
 {¶ 27} "THE COURT: * * * Is there anything you want to tell me that [your counsel] has not said on your behalf?
 {¶ 28} "MR. HUMPHREY: I think so, Your Honor. Because of the seriousness that you had mentioned to me the first day that I appeared before you of all the crimes that I face, the seriousness of those crimes, the many things that are at stake, I certainly do feel that a comment is appropriate. A few points I would like to make. The ability for me to maintain my family is certainly at stake here. This has always been much bigger than me. It's always been much bigger about myself. And I understand that. I understand the responsibility that I took and I played in these crimes and for that I am extremely sorry.
 {¶ 29} "My medical practice, my patients, the ability to care for them, particularly the ones that need it the most, I feel that they are at stake as well. I feel that the linearness as well as the ability to maintain a continuity of care in my healing process is at stake here as well, Your Honor. I hope that will be continued. I hope that won't be interrupted because it has been very helpful up to this point."
 {¶ 30} Dr. Breggin's report discusses how, in his opinion, the various medications which appellant had been prescribed had induced "an involuntary intoxication with a Substance-induced Mood Disorder with Manic and Psychotic Features [sic]." The report also details how appellant's behavior at each event forming the basis of the indictment was consistent with drug-induced mania. With respect to appellant's mental condition at the time of the plea hearing, the report states:
 {¶ 31} "Dr. Humphrey's confession, his presentencing statement to the court, and his statements at the sentencing hearing indicate that he remained confused, embarrassed and remorseful about why he would have committed such dreadful, irrational acts."
 {¶ 32} Appellant raises, therefore, only questionable inferences as to whether the medication he was taking rendered him incompetent to enter a plea. Accepting the premise that appellant's medications induced an intoxicated mania, it is doubtful that he would have the capacity to simultaneously be "confused, embarrassed and remorseful" about his acts. Moreover, at the plea hearing, he plainly denied that any medications had any adverse effect upon him. This court recently addressed a similar argument in the context of a motion to withdraw a plea inState v. Rittner, 6th Dist. No. F-05-003, 2005-Ohio-6526, ¶ 38:
 {¶ 33} "The competency of a defendant is presumed. The presumption is rebutted only when a preponderance of the evidence shows that due to his present mental condition [at the time of the plea hearing], the defendant was unable to understand the nature of the proceedings against him and could not assist in his defense. R.C. 2945.37(G); State v. Swift (1993),86 Ohio App.3d 407, 411. `A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.' State v. Bock
(1986), 28 Ohio St.3d 108, 110."
 {¶ 34} Thus, even though appellant notes that the trial court and appellant's counsel recognized his mental state at the time of the plea hearing and at the sentencing hearing, the trial court's decision to deny appellant's motion was not an abuse of discretion. Although appellant may have suffered from mental illness, the record does not contain any "indicia of incompetence." State v. Swift, 86 Ohio App.3d at 416, Judge Ford, concurring.
 {¶ 35} For the foregoing reasons, appellant's assignment of error is found not well-taken. Accordingly, the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J., concur.